UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DIRECT STEEL, LLC

VERSUS

TRI-C CIVIL CONSTRUCTION, LLC, ET AL.

CIVIL ACTION

NO. 25-2454

SECTION "N"

## ORDER AND REASONS

Before the Court is a motion to dismiss pursuant to Rule 12(b)(6) filed by Defendants C4 Holdings, LLC and TMC Builders, LLC (together, "Defendants").[1] Plaintiff Direct Steel, LLC, responded in opposition,[2] and Defendants replied in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order and Reasons denying the motion.

## I.    Factual Background

This case arises out of a federal government construction project in Fort Hood, Texas, known as the Supply Support Activity Warehouse. Direct Steel contracted with the U.S. Army Corp. of Engineers to perform work on the project as general contractor.[4] Direct Steel entered into a subcontract with Tri-C Civil Construction, LLC whereby Tri-C would provide labor and materials to furnish and install all concrete and asphalt paving work on the project. A dispute between the parties arose,

---

[1] Rec. Doc. 30.
[2] Rec. Doc. 37.
[3] Rec. Doc. 42.
[4] Rec. Doc. 1 ¶¶ 11-12.

with Direct Steel alleging that Tri-C failed to satisfy its submittal obligations, procure long-lead materials, provide adequate manpower and qualified supervision, timely commence work, and maintain its schedule obligations and commitments. The parties arbitrated their dispute.

On December 12, 2023, the arbitrator awarded Direct Steel $2,470,799, which was to be paid within 30 days, or would incur post-award interest at a rate of 8.5% per annum beginning on the thirty-first day.[5] When Tri-C failed to pay the award, Direct Steel instituted an action in this district to register the judgment and take a judgment debtor examination. Direct Steel then filed this action in the Northern District of Illinois to seek to pierce the corporate veil and bring other causes of action under Louisiana law, naming as defendants Tri-C, C4, TMC Builders, and Toni Causey and Carl Causey, a married couple that either together or separately are the sole owners of the entity defendants.[6]

Direct Steel moved to confirm in part and vacate in part the arbitration award. The court confirmed the arbitration award and entered a judgment of $2,497,756.50 against Tri-C, awarded fees for confirmation of the award in the amount of $1100, and awarded post-judgment interest at the statutory rate of 8.5%.[7] The judgment remains unsatisfied. The parties agreed to transfer the matter to the Eastern District of Louisiana.

---

[5] Rec. Doc. 1 ¶¶ 13-16.
[6] Rec. Doc. 1.
[7] Rec. Doc. 1-3.

Defendants C4 and TMC Builders now move to dismiss Counts IV and V of the complaint, which are claims seeking to hold these defendants liable for the judgment as a single business enterprise with Tri-C.

## II. Law & Analysis

### A. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes courts to dismiss a cause of action when it fails "to state a claim upon which relief can be granted." For a claim to survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[8] A claim is "plausible on its face" "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] A court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff,'"[10] and may not weigh the strength of the allegations at this stage.[11] Even so, the court "will not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."[12] A complaint must establish more than a "sheer possibility" the plaintiff's claims are true.[13]

---

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[9] *Id.*

[10] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

[11] *Twombly*, 550 U.S. at 563 n.8.

[12] *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal quotation marks omitted).

[13] *Iqbal*, 556 U.S. at 678.

**B. Single Business Enterprise Claims (Counts IV and V)**

"In Louisiana, corporations are generally recognized as separate entities"; however, that separate legal identity may be disregarded when the corporation is "merely an instrumentality or adjunct of another corporation."[14] When a plaintiff claims that a corporation is an alter ego, agent, tool, or instrumentality of another corporation, courts examine whether a group of entities constitutes a "single business enterprise."[15] Courts look at the substance of the corporate structure rather than its form for this determination.[16] Until 2024, when the legislature enacted La. R.S. § 12:1705, Louisiana courts applied an eighteen-factor test set forth in *Green v. Champion Insurance Company*.[17]

Defendants argue that the allegations in Counts IV and V—claims seeking to hold TMC Buildings and C4 liable as a single business enterprise with Tri-C—are insufficient to state a cause of action to disregard the Defendants' corporate form. La. R.S. § 12:1705(A) provides that the separate juridical personality of a business organization shall not be disregarded as between two business organizations "except on grounds that would justify disregarding the separate personality of a business organization as between the business organization and a natural person." Section 12:1705(B) further provides that notwithstanding subsection (A),

> the separate juridical personality of a business organization may not be disregarded merely because one or more of the following circumstances exist:

---

[14] *See Grayson v. R.B. Ammon & Assocs., Inc.*, 778 So. 2d 1, 14 (La. Ct. App. 2000).

[15] *See Lee v. Clinical Research Ctr. of Florida, L.C.*, 889 So. 2d 317, 323 (La. Ct. App. 2004).

[16] *Green v. Champion Insurance Company*, 577 So. 2d 249, 257 (La. Ct. App. 1991).

[17] *Id.*

(1) They control one another or are under the common control of the same person or business organization.

(2) They have common directors, officers, shareholders, members, managers, partners, or employees.

(3) They have common offices.

(4) They are subject to unified administrative control.

(5) They utilize a centralized accounting system.

(6) One business organization finances, incorporates, or organizes another.

(7) One business organization makes properly documented payments on behalf of another or makes properly documented use of the property of another.

(8) The employees of one business organization provide properly documented services for another.

(9) One business organization receives no business other than that given to it by another.

Direct Steel argues in response that La. R.S. § 12:1705 does not eliminate veil piercing or single business enterprise liability. And, in fact, Section 12:1705 did not remove a number of factors identified by Louisiana courts as relevant to the single business enterprise analysis.[18]

Veil piercing is appropriate (1) where shareholders, acting through the corporation, commit fraud or deceit on a third party, such that justice demands the corporate veil be pieced to allow the third party to recover from the shareholders, and (2) where the shareholders disregard corporate formalities to such an extent that the

---

[18] *See Hospital Serv. Dist. No. 1 v. Hospital Serv. Dist. No. 3*, 427 So. 3d 297, 304, 307 (La. Ct. App. 2025).

shareholders and corporation are indistinguishable.[19] Following enactment of La. R.S. § 12:1705, a number of factors relevant to veil piecing as between a shareholder and a corporation remain relevant to a judicial determination of whether businesses should be held liable as a single business enterprise. Such factors include commingling corporate or shareholder funds, failure to follow statutory formalities for corporate transactions, undercapitalization, failure to maintain separate bank accounts and bookkeeping records, undocumented transactions, and fraud or other misuse of the corporate privilege.[20]

Here, the complaint makes allegations that, if true, would support a finding that Direct Steel and the Defendants acted as a single business enterprise. The actions alleged as to both C4 and TMC Builders go well beyond the "mere" circumstances listed in R.S. La. § 12:1705(B). Direct Steel alleges that both Defendants commingled assets with Tri-C and used Tri-C assets to conduct their own business; Tri-C is inadequately capitalized; Tri-C's owner purchased a residential property to serve as a principal place of business for TMC Builders mere days after the arbitration award was entered against Tri-C as a sham to avoid liability; C4 is the owner of a residential property that serves both as the residence of the married couple that owns Tri-C and as the principal place of business of C4 and Tri-C; Tri-C and C4 have "extensive undocumented transfers of funds"; Tri-C obtained a Paycheck Protection Program loan that it disbursed to its common owners and C4; C4 has paid

---

[19] *Hill Int'l Inc. v. JTS Realty Corp.*, 370 So. 3d 16, 29-30 (La. Ct. App. 2022).

[20] *Id.* at 32-35; *see also Frankenmuth Mutual Ins. Co. v. Cecil D. Gassiott LLC*, 2025 WL 2588719 (W.D. La. Aug. 20, 2025) (applying *Hill*), *report and recommendation adopted*, 2025 WL 2577949 (W.D. La. Sept. 5, 2025).

the debts and financed the activities of Tri-C; and Ms. Causey identified Tri-C and C4, among other companies, as a single entity in a revenue purchase agreement she signed days after the arbitration award was entered.[21] Contrary to Defendants' assertion that the complaint's list of general ledger entries showing transfers between Tri-C and C4 totaling nearly $200,000 demonstrates that these transfers are in fact documented, mere ledger entries do not constitute documented transfers. Rather, documentation that legitimizes the transfers and liabilities between the entities is required. That documentation could be in the form of promissory notes, IOUs, loan agreements, or similar forms[22]; however, the complaint alleges "there were no contracts, payment applications, or other documentation supporting these transactions or purported projects."[23] Although the allegations of there being a single business enterprise are stronger and more extensive with respect to C4, the allegations of commingling of funds, undercapitalization, and a "sham" transaction in which the shared owners of TMC Builders and Tri-C used TMC Builders to purchase a residential property to avoid paying Tri-C's liability determined in arbitration are sufficient to state a plausible claim at this stage.

Direct Steel's complaint contains sufficient facts to state a facially plausible claim in Counts IV and V.

## III.   Conclusion

Accordingly,

---

[21] Rec. Doc. 1 ¶¶ 24-37, 80, 86.
[22] *See Hill Int'l Inc.*, 370 So. 3d at 32.
[23] Rec. Doc. 1 ¶ 35.

**IT IS ORDERED** that the motion to dismiss[24] is **DENIED**.

New Orleans, Louisiana, this 29th day of June, 2026.

ANNA ST. JOHN
UNITED STATES DISTRICT JUDGE

---

[24] Rec. Doc. 30.