UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DIRECT STEEL, LLC | * | CIVIL ACTION NO. 26-74 |
| | * | |
| | * | SECTION: “N”(1) |
| VERSUS | * | |
| | * | JUDGE ANNA ST. JOHN |
| | * | |
| TRI-C CIVIL CONSTRUCTION, LLC ET AL. | * | MAGISTRATE JUDGE JANIS VAN MEERVELD |
| ********************************* | * | |

ORDER AND REASONS

Plaintiff in this action is a judgment creditor alleging that the judgment debtor along with its principals and affiliated business entities engaged in a scheme to hide and transfer assets to avoid paying the judgment. Before the Court is plaintiff’s Motion to Compel Discovery Responses (Rec. Doc. 54). The Court held oral argument on September 16, 2026. A number of the issues have been mooted. As to the remaining issues, as discussed in more detail below, the Court finds that both transactions with the judgment debtor and transactions between the non-debtor defendants are relevant and proportional with the needs of the case. Defendants must supplement their discovery responses accordingly. However, as the plaintiff conceded at oral argument, transactions with third parties are not relevant, at least at this stage. The Motion to Compel (Rec. Doc. 54) is GRANTED in part and DENIED in part as follows.

Background

On December 12, 2023, plaintiff Direct Steel, LLC, obtained an arbitration award against Tri-C Civil Construction, LLC, for over $2.4 million for damages caused by Tri-C’s deficient work on a federal construction project in Texas. On April 17, 2024, a federal district court confirmed the arbitration award against Tri-C and issued a judgment of $2,497,756.50 against it. The court also

awarded fees in the amount of $1,100 for confirmation of the award and post-judgment interest at the statutory rate of 8.5%. Tri-C has not paid anything towards this judgment.

Toni Causey owns 51% of Tri-C and Carl Causey owns the remaining 49%. Mr. and Ms. Causey are also the sole owners and officers of C4 Holdings, LLC. During the judgment debtor proceedings, Ms. Causey testified that Tri-C has no employees, virtually no assets, and is no longer operating. Direct Steel alleges that Mr. and Ms. Causey operated Tri-C in a manner that disregarded the corporate entity such that it became indistinguishable from themselves. It alleges further that C4 and Tri-C have integrated their resources and assets to achieve a common business purpose such that they became a single business enterprise. For example, in 2021, Tri-C obtained a Paycheck Protection Program loan that was disbursed equally between Tri-C, C4, and Mr. and Ms. Causey. Additionally, C4 guaranteed the payment and performance bonds that Tri-C was required to procure under the contract for the construction project that spawned the underlying dispute.

Furthermore, Direct Steel alleges that Mr. and Ms. Causey diverted assets from Tri-C. For example, in 2023, after the arbitration demand had been filed, Mr. and Ms. Causey took disbursements of at least $148,000 from Tri-C. Ms. Causey took disbursements of at least $71,000 from Tri-C between January and September 2024. Direct Steel alleges further that Ms. Causey purchased a property in Port Mansfield, Texas just days after the arbitration award in December 2023. She then registered TMC Builders LLC with the Louisiana Secretary of State in March 2024 and listed the Port Mansfield address as TMC's principal place of business. Direct Steel alleges on information and belief that Ms. Causey is the majority owner of TMC and that TMC has the same employees as Tri-C. Further, Ms. Causey is TMC's only identified officer and Ms. Causey testified that Tri-C's only ongoing business is using its contacts to procure materials that it provides to TMC.

Direct Steel has named Tri-C, C4, TMC, and Mr. and Ms. Causey as defendants in this action. It seeks to revoke the distribution of money by Tri-C to Mr. Causey, to Ms. Causey, and to C4 after Direct Steel's right to payment from Tri-C arose. It also asserts a claim against TMC as a single business enterprise with Tri-C and seeks an order that the $2.4 million judgment against Tri-C be entered against TMC. It asserts the same claim against C4. Finally, it asserts an alter ego claim against each Mr. and Ms. Causey and seeks an order that the judgment against Tri-C be entered against Mr. and Ms. Causey.

This matter was scheduled for a bench trial on December 29, 2026, but the District Court recently continued the trial without date on the parties' joint motion. The deadline to complete discovery is now February 8, 2027.

Presently before the Court is Direct Steel's Motion to Compel Discovery Responses. Only defendant Tri-C has responded to Direct Steel's discovery requests, largely by citing the testimony and documents it produced in the judgment debtor proceedings related to the underlying arbitration. Direct Steel now seeks that document production in native format, seeks more specific identification of documents referenced generally in Tri-C's responses, and seeks documents and responses from the non-debtor defendants. Direct Steel also demands that defendants provide dates for the depositions of Toni Causey, Carl Causey, Amanda Causey, and Tish Ledoux.

In opposition, defendants report that Ms. Causey's compounding health issues have made it difficult to obtain an available date for her deposition and have also impaired her ability to assist counsel in obtaining additional information. Defendants' opposition memorandum identifies the main discovery dispute as Direct Steel's request for wholesale production of the non-debtor defendants' financial records. They say Direct Steel could determine from the Tri-C information it already has whether any specific conduct by Tri-C supports its revocatory claim or alter ego theory.

They seem to argue that Direct Steel should start with the Tri-C financial records and then seek targeted discovery to understand any particular transactions or disregard of corporate formalities. They argue that wholesale disclosure of financial records for C4, TMC, and the Causeys is disproportionate with the needs of the case.

At oral argument, the deposition issue was resolved. The parties agreed to work together to select mutually agreeable dates for all four depositions and will work cooperatively to accommodate Ms. Causey's health issues.

The native format issue was partially resolved. Defendants agreed to produce the documents in native format but were not sure whether they would be able to do so with the existing technology. The Court required defendants to continue their attempts to produce the documents in native format. If they have not yet done so, the Court now orders that they must produce the native format documents or provide a written explanation to Direct Steel why the native format production is not available for any or some categories of documents on or before October 15, 2026. If all or some documents cannot be produced in native format, the parties shall meet and confer to discuss how to proceed and, if issues remain, they may contact the Court for a status conference with the undersigned.

Additionally at oral argument, the Court resolved the dispute over defendants' references to the "JD Rule." Defendants will revise their written responses to interrogatories to provide more specific references to transcript testimony and JD Rule documents, like they did in opposition to the motion to compel. This ruling applies to Interrogatories 2, 6, 7, 8, 10, and 17. The Court now orders that the supplemental responses be produced on or before October 15, 2026. As to Direct Steel's request that defendants identify responsive documents by bates number, the Court will not require such identification at this time and will only reconsider this request if defendants are unable

to produce the documents in native format and as they are kept in the ordinary course of business. See Fed. R. Civ. P. 34(b)(2)(E).

At oral argument, Direct Steel withdrew its request for accounting policies (Request for Production No. 20). Finally, Direct Steel agreed to limit its requests to transactions and relationships between the defendants.

This leaves two main issues: (1) whether Direct Steel is entitled to obtain documents from the non-debtor defendants about their transactions and relationships with Tri-C, even though Tri-C has provided documents showing *its* side of those transactions and (2) whether Direct Steel is entitled to obtain documents and information from non-debtor defendants about their transactions and relationships with each other, even if they do not involve judgment creditor Tri-C. There are two related issues that do not fit neatly into these categories. The first is whether Direct Steel is entitled to obtain information about the ownership of and compliance with corporate formalities by C4 and TMC. The second concerns property ownership documents of all defendants.

## Law and Analysis

### *1. Scope of Discovery*

The Federal Rules of Civil Procedure provide that "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Proc. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Id.

"[I]information is relevant if it 'bears on, or . . . reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party.'" Leonard v. Martin, 38 F.4th 481, 489 (5th Cir. 2022) (quoting Coughlin v. Lee, 946 F.2d 1152, 1159 (5th Cir. 1991)). "The threshold for relevance at the discovery stage is lower than the threshold for relevance of

admissibility of evidence at the trial stage." Tate v. DG Louisiana LLC, 653 F. Supp. 3d 316, 319–20 (E.D. La. 2023).

Relevant information falls within the scope of discovery only if it is proportional to the needs of the case. Rule 26 requires consideration of the following factors in assessing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. Proc. 26(b)(1).

*2. Revocatory Actions*

This lawsuit includes a revocatory action against Carl Causey, Toni Causey, and C4, seeking to undo transfers of funds by Tri-C to each of them after Direct Steel's rights against Tri-C arose. "An obligee has a right to annul an act of the obligor, or the result of a failure to act of the obligor, made or effected after the right of the obligee arose, that causes or increases the obligor's insolvency." La. Civ. Code Ann. 2036. To establish a revocatory claim, Direct Steel must show each "offending transaction: (1) was made or effected after the right of the obligee arose and (2) caused or increased the obligor's insolvency." Traina v. Whitney Nat. Bank, 109 F.3d 244, 246 (5th Cir. 1997). No fraud is required.

*3. Alter Ego and Single Business Enterprise Claims*

This lawsuit also includes claims that each Mr. and Ms. Causey are alter egos of Tri-C and that each C4 and TMC are a single business enterprise with Tri-C. "[T]he legal fiction of a distinct corporate entity may be disregarded when a corporation is so organized and controlled as to make it merely an instrumentality or adjunct of another corporation." Green v. Champion Ins. Co., 577 So. 2d 249, 257 (La. Ct. App.), writ denied, 580 So. 2d 668 (La. 1991). Thus, Louisiana courts use

the "single business enterprise" theory to extend liability to a group of separate corporations. Id. Courts use the following, non-exclusive, list of factors to find that a group of entities constitute a "single business enterprise:"

> 1. corporations with identity or substantial identity of ownership, that is, ownership of sufficient stock to give actual working control;
> 2. common directors or officers;
> 3. unified administrative control of corporations whose business functions are similar or supplementary;
> 4. directors and officers of one corporation act independently in the interest of that corporation;
> 5. corporation financing another corporation;
> 6. inadequate capitalization ("thin incorporation");
> 7. corporation causing the incorporation of another affiliated corporation;
> 8. corporation paying the salaries and other expenses or losses of another corporation;
> 9. receiving no business other than that given to it by its affiliated corporations;
> 10. corporation using the property of another corporation as its own;
> 11. noncompliance with corporate formalities;
> 12. common employees;
> 13. services rendered by the employees of one corporation on behalf of another corporation;
> 14. common offices;
> 15. centralized accounting;
> 16. undocumented transfers of funds between corporations;
> 17. unclear allocation of profits and losses between corporations; and
> 18. excessive fragmentation of a single enterprise into separate corporations.

Id. at 257-58.

While the "single business enterprise" theory applies to corporate affiliates, the alter-ego theory is used to impose liability on an owner or shareholder for the debts of the company. See In re Royal Alice Props., LLC, 619 B.R. 839, 861 (Bankr. E.D. La. 2020); Riggins v. Dixie Shoring Co., 590 So. 2d 1164, 1168 (La. 1991). Courts consider the following non-exclusive list of factors when determining whether to apply the alter ego doctrine: "1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities for incorporating and transacting corporate affairs; 3) undercapitalization; 4) failure to provide separate bank accounts and

bookkeeping records; and 5) failure to hold regular shareholder and director meetings." Riggins, 590 So. 2d at 1168. Courts are "reluctant to hold a shareholder, officer, or director of a corporation personally liable for corporate obligations, in the absence of fraud, malfeasance, or criminal wrongdoing." Id. "[T]he totality of the circumstances is determinative." Id. at 1169.

*4. Analysis*

*a. Non-debtor defendant information that reflects transactions and relationships with Tri-C*

There is no dispute that information about transactions and relationships between each of the non-debtor defendants and Tri-C is relevant. Defendants argue that production of this information is not proportionate with the needs of the case because Direct Steel already has evidence of any allegedly problematic transactions with Tri-C. But defendants' objections did not explain with any specificity the burden that would be involved in producing the requested information. Nor did their opposition memorandum provide such an explanation. Nor did they make a showing of undue burden at oral argument. [1]

Direct Steel argues that in light of the suspicious activity it has identified in the Complaint, it has concerns that evidence and information produced by Tri-C may not be complete. Direct Steel seeks documents showing the non-debtor's side of the transactions to corroborate them and determine the legitimacy of any purported business purposes.

The Court finds that given the allegations of wrongdoing in the Complaint, the importance of obtaining the non-debtor's information is proportionate with the needs of the case.[2] This is so

[1] Defendants argued that their ability to secure documents is hampered by Ms. Causey's medical condition. This may warrant extensions of time to comply, but it cannot relieve defendants of producing relevant information entirely. Importantly, at this stage it appears that Tri-C's bookkeeper Amanda Causey and CPA Tish Ledoux may be able to locate at least some of the requested information. As to the size of the companies and the volume of transactions that might be implicated, defendants were equivocal. It is undisputed that TMC was not even in existence prior to 2024. And defendants explained at oral argument that C4 business operations consist only of owning a building.

[2] No privacy concerns have been invoked, and indeed, there is a Protective Order in this case that limits disclosure of confidential information.

even though much of the information will be cumulative of Tri-C's production. Importantly, defendants' reliance on vague assertions of "voluminous" documents is not enough. Defendants will supplement their responses to Requests for Production 4, 5, 6, 14, 15, 16, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 34, 35, 36, 37, 38, and 40 to include the non-debtor's documents to the extent they relate to or involve Tri-C. This production is due by October 22, 2026.

As to the communications requested in Request for Production 39, however, the Court will not now compel a response. This request has the potential to be overly burdensome. The parties shall meet and confer to discuss narrowing this request following the document production when Direct Steel may have a better sense of which communications are likely to be relevant. If they reach an impasse, they may contact the Court to request a status conference with the undersigned.

*b. Non-debtor defendant information that reflects transactions and relationships amongst any of the defendants.*

The parties dispute whether non-debtor defendant information reflecting transactions and relationships between the non-debtor defendants (and not Tri-C) is relevant. Direct Steel argues these documents are relevant to establishing that these entities were acting as the others' alter egos. But defendants argue that only transactions and relationships between each non-debtor defendant and Tri-C are relevant.

Indeed, Direct Steel's Complaint does not allege that TMC and C4 are a single business enterprise. It does not allege that TMC and C4 are alter egos of Toni and Carl Causey. It only alleges that each of the non-debtor defendants is a single business enterprise with or alter ego of Tri-C. Further, Direct Steel does not allege that transactions by and among the non-debtor defendants are subject to revocation. It alleges only that certain transactions between Tri-C and each of the non-debtor defendants must be revoked. The transactions and relationships between the non-debtor defendants are not directly relevant.

Nonetheless, the Court finds information about these transactions and relationships could reasonably lead to information that is relevant to the issues in this case. Direct Steel alleges that Toni Causey and Carl Causey own each Tri-C, C4, and TMC. They allege and have evidence purporting to show that Tri-C increased its insolvency by transferring money to each of the non-debtor defendants and that there has been comingling of assets between Tri-C and each of the non-debtor defendants. Transactions and relationships among the non-debtor defendants may shed light on transactions of each non-debtor with Tri-C.

As to the burden of production, as noted above, defendants have not shown that production of the requested information would be overly burdensome. The Court finds the requested production is proportionate with the needs of the case. In allowing broader discovery, the Court is also influenced by the District Court's decision to deny C4 and TMC's motion to dismiss the single-business-enterprise claims for failure to state a claim. Furthermore, this is not a case where plaintiff has alleged a contract or tort claim against one defendant and then further alleged alter ego and single business enterprise as to its owners and affiliates. In such a case, it might serve judicial economy to delay discovery into alter ego and single business enterprise pending a judgment against the lead defendant. In contrast, here, Direct Steel has already obtained a judgment against Tri-C and is in the enforcement phase.

Accordingly, defendants will supplement their response to Requests for Production 4, 5, 6, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 34, 36, 37, 38, and 40 to include the non-debtor's documents to the extent they relate to or involve any other defendant. As to request No. 35 seeking evidence of cash withdrawals, distributions, or owner draws, because it is likely impossible to determine whether any withdrawal involved a co-defendant, production

must be made in full (i.e., as to all such transactions). The production ordered in this subsection (b) is due by October 22, 2026.

*c. Ownership and corporate formality information*

Several document requests seek information about ownership, organizational documents, and compliance with registered agent requirements. It appears defendants have only responded as to Tri-C. Because each C4 and TMC are alleged to be a single business enterprise with Tri-C, the Court finds the requested information is relevant for all defendants. Defendants will supplement their response to Requests for Production 2, 3, 16, 33, 42, and 43 to include responsive information as to all entity defendants. This production is due by October 22, 2026.

*d. Property titles*

Three of Direct Steel's requests do not fit neatly into the above categories. Request No. 13 seeks documents and communications related to the purchase of the Port Mansfield property. Although these documents may not ultimately reflect a transaction between the defendants, the Complaint suggests that the Port Mansfield property may have been purchased with Tri-C funds or otherwise involved Tri-C's interests after the arbitration award was entered. The requested documents are relevant for discovery purposes and must be produced.[3] The production is due by October 15, 2026.

Additionally, in Requests for Production No. 7 and No. 8, Direct Steel seeks documents showing property titles and equitable interests of each defendant in real property. The Court finds such documents are only relevant to the extent they concern the above referenced Port Mansfield property, the properties of Tri-C, and the properties of the other defendants to the extent the

[3] No specific showing of burden has been made by the defendants. Nonetheless, to the extent defendants believe that the requested "communications" results in an overly burdensome production, they shall confer with Direct Steel to reach a compromise regarding the production. The conference must occur at least seven days prior to the production deadline.

properties were transferred to or from any other defendant. Production of these documents shall be made by October 22, 2026.

*e. Attorneys' Fees*

Direct Steel seeks an award of attorneys' fees pursuant to Federal Rule of Civil Procedure 37(a)(5)(A). The Court finds that an award of attorneys' fees is not warranted at this time. The Court cautions the defendants, however, that they must meet their discovery obligations and comply with Court orders to avoid sanctions in the future.

## Conclusion

For the foregoing reasons, the Motion to Compel is GRANTED in part and DENIED in part.

- The parties will work together to select mutually agreeable dates for the deposition of Toni Causey, Carl Causey, Amanda Causey, and Tish Ledoux.
- By October 15, 2026, Tri-C will produce its documents in native format and as kept in the ordinary course of business or provide a written explanation to Direct Steel why the native format production is not available for any or some categories of documents. If all or some documents cannot be produced in native format, the parties shall meet and confer to discuss how to proceed and, if issues remain, they may contact the Court for a status conference.
- Defendants will revise their written responses to Interrogatories 2, 6, 7, 8, 10, and 17 by October 15, 2026.
- The Court will not require bates number identification at this time and will only reconsider if defendants are unable to produce the documents in native format and as they are kept in the ordinary course of business.
- Request for Production 20 was withdrawn.

- Defendants will supplement their response to Requests for Production 4, 5, 6, 14, 15, 16, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 34, 35, 36, 37, 38, and 40 to include the non-debtor's documents to the extent they relate to or involve Tri-C. This production is due by October 22, 2026.
- Defendants will supplement their response to Requests for Production 4, 5, 6, 9, 10, 11, 12, 14, 15, 16, 17, 18, 19, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 34, 36, 37, 38, and 40 to include the non-debtor's documents to the extent they relate to or involve any other defendant, and Request 35 in its entirety. This production is due by October 22, 2026.
- Defendants will supplement their response to Requests for Production 2, 3, 16, 33, 42, and 43 to include responsive information as to all entity defendants. This production is due by October 22, 2026.
- Documents responsive to Request for Production 13 must be produced by October 15, 2026.
- By October 22, 2026, defendants will produce documents responsive to Requests for Production No. 7 and No. 8, to the extent they concern the Port Mansfield property, the properties of Tri-C, or the properties of the other defendants to the extent the properties were transferred to or from any other defendant.
- No attorneys' fees will be awarded at this time.

New Orleans, Louisiana, this 1st day of October, 2026.

Janis van Meerveld

Janis van Meerveld
United States Magistrate Judge